UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DORIAN HENDRICKS,<br><br>　Plaintiff,<br><br>　v.<br><br>THE CITY OF EAST ST. LOUIS et al.,<br><br>　Defendants. | Case No. 23-cv-3349-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court following a magistrate judge's report and recommendation that this Court enter default judgment in favor of the Plaintiff and against the Defendants in the amount of $825,035.97, (Doc. 28), following an evidentiary hearing. Being duly advised in the premises having fully considered the issues and arguments raised, the Court hereby **REJECTS** the Report and Recommendation, (Doc. 28), **DENIES** the Plaintiff's Motion for Default Judgment, (Doc. 25), and **VACATES** the entry of default. (Doc. 24).

**I.    BACKGROUND**

On Oct. 25, 2022; the Plaintiff was at a night club in East St. Louis. Allegedly, a fight broke out between the Plaintiff and several unidentified individuals. Those unidentified individuals later ambushed the Plaintiff's brother outside the night club. During the altercation, the Plaintiff was hit repeatedly in the head. The Plaintiff and his brother fled the club, guns were drawn, and the Plaintiff drove away.

As he was fleeing, a detective for the City of East St. Louis—who worked security for the night club in addition to his police duties—followed the Plaintiff in an unmarked police vehicle. He followed the Plaintiff down a dead-end street. According to the Plaintiff, the detective then

jumped out of the car, failed to identify himself as law enforcement, and opened fire.

The Plaintiff reversed his car and drove past the detective as he continued to fire at the Plaintiff's car. A bullet struck the Plaintiff in his left leg. The Plaintiff pulled over and moved to the back seat of his car. He then left the scene and crossed into Missouri for medical treatment. The Plaintiff suffered permanent injury to his left leg and suffers pain and partial loss of use.

The Plaintiff filed this lawsuit on October 10, 2023. The Plaintiff served the Defendants on October 17, 2023, (Docs. 8-12). That service was returned executed on November 7, 2023. (Docs. 16-20). However, the Defendants failed to file an answer or responsive pleading; thus, on January 2, 2024, the Clerk entered the Defendants' default. (Doc. 24). The Plaintiff then moved for default judgment in the amount of $1.5 million. (Doc. 25).

The Plaintiff consented to magistrate judge jurisdiction. Once assigned, the magistrate judge called an evidentiary hearing on the motion for default judgment. (Doc. 27). Following that hearing the magistrate judge carefully analyzed the Plaintiff's claims and, after an extensive review of the available evidence, issued a thorough, well-reasoned report and recommendation. The magistrate judge recommended that this Court enter default judgment against the Defendants in the amount of $825,035.97—a little over half the Plaintiff's initial demand of $1.5 million. (Doc. 28).

Following the magistrate judge's report and recommendation, the parties were given fourteen days to file an objection. Nine days later—on July 26, 2024—the Defendants entered an appearance for the first time and filed an objection. In that objection, the Defendants claimed that, while service was returned as executed, they were not served and had no notice of the

proceedings.[1] They requested that this Court not only reject the report and recommendation, deny the motion for default judgment, and vacate the entry of default; but also requested that the Court dismiss this case without prejudice for failure to serve within ninety days, as required by Federal Rule 4(m). FED. R. CIV. P. 4(m). (Doc. 35).

Given the discrepancy between the Defendants' allegations and the process server's sworn affidavit, the Court held an evidentiary hearing. (Doc. 51). At that hearing, several witnesses testified, including the chief of police for the City of East St. Louis, the process server, and the executive assistant to the city manager of East St. Louis. At the conclusion of the hearing, the Court directed the parties to submit further briefing and took the matter under advisement.

## II.    DISCUSSION

There is a factual dispute between the parties over what occurred here. The process server testified that he perfected service on the Defendants while the Defendants claimed they were not adequately served. The process server has a long career, spanning several decades. He testified that he had served the City of East St. Louis and the police department on hundreds of occasions without issue.

In his testimony, the process server testified that the long-standing practice was to leave summons with the city clerk's office. However, after a change in city clerks a couple years ago, the city clerk's office would no longer accept service. Instead, they direct process servers to serve the individual department being served and the city manager. The process server testified that he followed this new procedure multiple times before without issue.

---

[1] The Defendants state that they only found out about this lawsuit when the Madison – St. Clair County Record published an article on the subject. (Doc. 35). *See* Steve Korris, *Judge recommends $825K default judgment against East St. Louis in excessive force case*, MADISON – ST. CLAIR COUNTY REC. (Jul. 25 2024).

First, the process server testified that he served Chief of Police Kendall Perry. He marked the time of service as 4:28 p.m. The process server alleges that he spoke directly with an individual who identified himself as the chief of police and that this individual did not disagree or correct the process server when he addressed that individual as Chief Kendall Perry. The process server asked this individual's age, and he responded that he was fifty-one years old—the same age as Chief Perry. Chief Perry testified, and the Defendants presented evidence to corroborate, that he was at a speaking engagement elsewhere and had taken the day off, therefore it was impossible for him to receive service. The Plaintiff argues that it is entirely plausible that Chief Perry returned to his office at some point near the end of the day, received service, and did not recall the interaction. This is one of the factual disputes between the parties.

Next, the process server testified that he left service with the city manager's executive assistant. The process server claims that he spoke with the city manager's executive assistant—who was recently hired—and she stated that she would accept the documents and provide them to the city manager. Yet, the city manager did not receive those documents. The Defendants assert that serving the city manager's executive assistance constituted "substitute service" and, under Illinois law, substitute service is not permitted in these kinds of cases. Therefore, the Defendants argue that the service was invalid under Illinois law, making service invalid and, consequently, making the Plaintiff's claim subject to dismissal for failure to serve within the time frame required by the Federal Rules. On this issue, there is no factual dispute as to whether he provided the documents to the city manager's executive assistant, this is a legal dispute over whether that service was valid.

Service of process in federal cases is a procedural, not substantive matter; therefore, the Federal Rules of Civil Procedure—not Illinois's—governs service of process. However, Rule

4

4(j)(2)(B) permits service of process upon a local government so long as it is done in a manner prescribed by state law. FED. R. CIV. P. 4(j)(2)(B). Subsection A of Rule 4(j)(2) permits service of process by delivery to a chief executive officer—who the Defendants impliedly argue is the mayor. As the process server did not attempt to serve the mayor, to be valid, the service must have been valid under Illinois law.

Service of process on public, municipal, and governmental entities is governed by Sec. 2-211 of the Illinois Rules of Civil Procedure. 735 ILL. COMP. STAT. 5/2-211. Under the Illinois rule, service upon a city is proper when either the mayor or city clerk is served. However, the power to accept service of process is delegable by law or custom. *Sarkissian v. Chi. Bd. of Educ.*, 776 N.E.2d 195, 206 (Ill. 2002).

In this case, the process server asserts that the new city clerk has delegated the ability to accept service of process on an individual department or the city manager or both. However, while the power to accept service is delegable, for service to be validly executed, the person delegated to accept service must communicate to the process server that they are authorized to accept service. *See Acosta v. Ashley's Quality Care, Inc.*, 2018 U.S. Dist. LEXIS 57088, at *5–6 (N.D. Ill. April 4, 2018) (collecting cases). If the person delegated to accept service does not communicate to the process server that they are authorized to accept service, the service is not validly executed:

> Service upon an intelligent clerk of a company who acts as a receptionist and who understood the purport of the service of summons, is proper service of process under Illinois law . . . . [However,] service on a receptionist ineffective under Illinois law where the receptionist objected to service, never claimed to be authorized to accept service, or demonstrated by subsequent actions that he or she did not understand the purpose of service.

*Id*. (internal citations and quotations omitted).[2]

Here, it is not entirely clear that the executive assistant was authorized to accept service. The Defendants argue categorically that she cannot accept service as substitute service is only permissible on an abode. The Defendants are misguided, however, because the Defendants seem to be referring to Federal Rule 4(e) governing service upon individuals. While the city manager is an individual, the city manager was an officer authorized to accept service of process on behalf of the city, thus, service is governed by Federal Rule 4(j)(2). The fact that the city manager is an individual does not convert service upon a municipality under Rule 4(j) into service upon an individual under Rule 4(e)—if that were the case, given service must be given to an individual within any corporation, organization, or government; then Rule 4(j) would be superfluous.

Thus the Court turns to the question of whether the city manager's executive assistant was authorized to accept service on the city manager's behalf. Initially, the executive assistant stated she was unsure whether she could accept service, but excused herself to ask other members of the office whether she could accept service. They told her that they did not accept service. Notwithstanding those statements, when the executive assistant returned to the process server, she stated that she would take the papers on behalf of the city manager's office. While she did not fully understand what to do with those documents, she did understand them to be legal papers, confirmed with the process server that she would accept service on behalf of the city manager's office, and planned to forward those documents to the city manager. However,

---

[2] The *Acosta* Court's discussion and application of this principle concerns 735 ILL. COMP. STAT. 5/2-204(1)—which governs service on private companies and corporations, not service on governments. However, the key language in that statute that has led courts to the conclusion that service can be delegated for private corporations also appears in the Illinois statute governing service on governments. *Compare* 735 ILL. COMP. STAT. 5/2-204(1) (". . . A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State.") *with* 735 ILL. COMP. STAT. 5/2-211 ("In actions against public, municipal, governmental . . . summons may be served by leaving a copy with [*inter alia*] the president or clerk or other officer corresponding thereto.").

those documents were never received by the city manager, nor was the city manager apparently aware of any legal papers. Determining whether the executive assistant was sufficiently educated in the prior eight days she had been working at the city manager's office on the importance of service of process is unnecessary; ultimately the city manager did not receive notice of the litigation, despite genuine belief and seemingly valid execution by the process server.

The Court finds that the Plaintiff properly executed service of process here within the ninety days required by Rule 4(m). However, even if service was not validly executed and more than ninety days have passed without valid service, the Plaintiff has established good cause for failing to validly execute service—they were of a genuine belief that service had been validly executed on multiple defendants. For these reasons, the Court finds that the Plaintiff did not run afoul of Rule 4(m) and, consequently, this action is not subject to dismissal on those grounds.

The Court now turns to the question of default judgment and the report and recommendation. While the Plaintiff properly executed service; that does not mean service was perfected on the Defendants. A plaintiff can satisfy their obligation to serve a defendant, but if that defendant receives no notice of a lawsuit, it would be unjust and ultimately a violation of due process to enter judgment against them. The Federal Rules allow a defendant to seek relief from default and default judgment if they can show good cause for the error, quick action to correct, and a meritorious defense.

Here, the process server was directed to leave the documents with a newly hired executive assistant, but she never passed on those documents to the city manager. It is disputable whether the process server served the Chief of Police himself or some other party. However, even if the police chief was briefly in the office long enough to be served, it is plausible that he misplaced or misremembered receiving the documents.

It is evident that the Defendants' failure to appear was not an affirmative choice—they simply received no notice. While the Plaintiff followed the correct procedures, through no fault of their own, organizational miscommunication prevented the Defendants from receiving notice of this suit. The Defendants did not evade service, nor did they act in a malicious or intentional manner. While a Defendant's neglect may not be good cause to vacate a default, the question before the Court is not whether these individuals, delegated to receive the documents by the city clerk, had good cause for failing to appear; the question before the Court is whether there was good cause for the city clerk's and the city's lack of knowledge. Employees failing to hand over important legal documents and failing to make their organization aware of the legal proceedings, in the unique circumstances in this case, presents good cause.

The Defendants may have been neglectful, but mere neglect is insufficient—especially in cases such as this one with grave accusations of police misconduct and over one million dollars in damages at controversy. As soon as the Defendants were made aware of this suit, they filed an entry of appearance and objection—manifesting quick action to correct the error. Additionally, the Defendants claim to have a meritorious defense which, given this case involves a police detective firing his weapon, the Court infers to be probable cause, qualified immunity, and a version of the facts different from the Plaintiff's. Therefore, the Defendants have satisfied the criteria to vacate the default.

While the service of process issue here is complex and could possibly support overruling the Defendants' objection and granting default judgment; the nature of these claims, the amount in controversy, and the factual disputes involved weigh in favor of allowing this case to proceed with litigation.

As an aside, the Defendants assert that the magistrate judge was legally and factually

8

wrong in her report and recommendation. The issue of service of process was not before the magistrate judge. The magistrate judge, in possessing a sworn affidavit indicating multiple, valid, executions for service of process, had no reason to doubt the efficacy of service. The magistrate judge thoroughly reviewed the relevant claims and issued a report and recommendation on that basis; there is nothing legally or factually wrong with the magistrate judge's analysis. This Court rejects the magistrate judge's analysis *not* because it was erroneous, but because the Defendants, having now entered an appearance, should be given the opportunity to litigate this case and present their defense—an opportunity they did not have when the magistrate judge initially reviewed this case.

## **CONCLUSION**

Finding that the Plaintiff validly executed service, the Court **DENIES** the Defendants' request to dismiss this case for failing to comply with Federal Rule of Civil Procedure 4(m).

However, finding that the service was not perfected on the Defendants and that they have demonstrated good cause, swift action, and a meritorious defense, the Court hereby **REJECTS** the report and recommendation of the magistrate judge and **DENIES** the Plaintiff's Motion for Default Judgment.

The Court hereby authorizes the issuance of alias summons for the Defendants. The Plaintiff shall have thirty days from the entry of this order to serve those summonses. Service must comply with Federal Rule of Civil Procedure 4(m) and relevant Illinois law.

**IT IS SO ORDERED.**
**DATED:  December 12, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**